UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>       -v.-<br><br>EDWARD SMITH,<br><br>                   Defendant. | 14 Cr. 813 (KPF)<br>19 Civ. 3137 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Edward Smith, who is presently housed at the United States Penitentiary in Thomson, Illinois ("USP Thomson"), filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel at trial and at sentencing. Thereafter, with the assistance of counsel, Mr. Smith filed (i) a motion for leave to amend his Section 2255 motion to add a claim that the jury at his trial had been erroneously instructed on the relevant law, and (ii) a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons set forth in the remainder of this Opinion, this Court denies Mr. Smith's Section 2255 motion and grants in part his Section 3582(c)(1)(A)(i) motion.

## BACKGROUND[1]

### A.    The Prosecution and the Trial

Mr. Smith was initially charged in a sealed complaint dated September 19, 2014, with possessing a firearm and ammunition after having

---

[1]    Except where otherwise indicated, the Court cites to the parties' submissions by their docket entry number and will use the page numbers assigned by this Court's electronic case filing ("ECF") system. "Dkt." refers to the docket in Mr. Smith's criminal case; and "2255 Dkt." refers to the docket in Mr. Smith's civil case, both of which are referenced in the caption of this Opinion. In addition, "Appeal Dkt." refers to the docket in Mr.

been convicted of a felony offense, both in violation of 18 U.S.C. § 922(g)(1);

possession of crack cocaine with intent to distribute, in violation of 21 U.S.C.

§§ 812, 841(a)(1), and 841(b)(1)(C) and 18 U.S.C. § 2; and possessing a firearm

in connection with the charged narcotics offense, in violation of 18 U.S.C.

§ 924(c)(1)(A)(i).  (Dkt. #1).  The offense conduct was described by the Probation

Office, without objection from the defense, as follows:

> On June 25, 2014, [New York City Police Department ("NYPD")] officers were dispatched to the vicinity of Jefferson Place and Franklin Avenue in the Bronx, NY, in response to a fight in progress.  Officers were subsequently notified by dispatchers that one of the individuals at the location was in possession of a firearm.  When officers arrived on the scene, in a marked police vehicle, they observed SMITH, who matched the description of the suspect provided by the dispatcher.  Upon seeing the NYPD officers, SMITH attempted to flee the scene on foot.
>
> As the [officers] gave chase, SMITH ran through a walkway adjacent to a house directly behind another house in the vicinity of Clinton Street and Jefferson Street in the Bronx.  SMITH proceeded to descend in the backyard of the second house (the Residence) into an area with a concrete floor and  construction supplies. While SMITH descended into the Residence's backyard, the officer remained at the edge of the adjacent backyard on top of a wall that overlooked the Residence's backyard.  From on top of the wall, the officer observed SMITH drop something while standing in the Residence's backyard.  At that moment, the officer also heard the sound of metal hitting concrete. And he saw SMITH look down.  Additionally, he next observed SMITH making a throwing motion with his hands.
>
> The officer then observed SMITH proceed to climb over a fence to exit onto the street in front of the Residence.

---

Smith's appeal to the United States Court of Appeals for the Second Circuit.  *See United States* v. *Smith*, No. 15-3313-cr (2d Cir.).

SMITH was further observed removing a blue athletic jersey shirt that he had been wearing. Shortly thereafter, SMITH was apprehended by other NYPD officers down the block from the Residence and he was placed under arrest. SMITH was then transported to the local police station.

Shortly after arriving at the police station, SMITH was observed trying to pull something out of his pocket and bring it toward his mouth. As one of the officers attempted to stop SMITH from moving his hands toward his mouth, an altercation ensued. Following this altercation, SMITH was subdued and 14 bags containing crack were removed from SMITH's pocket. Subsequent lab analysis determined that the crack had a total combined weight of approximately 357 milligrams.

Following SMITH's arrest, NYPD officers searched the backyard of the Residence. Approximately 15 or 30 minutes later, they recovered a six-round magazine and three .380 caliber cartridges on the concrete floor of the Residence's backyard.

On June 28, 2014, one of the arresting officers received a call regarding a gun that was found near the Residence. The officer went to the home next to the Residence and recovered a black firearm a number of feet from the spot where SMITH had been seen in the Residence's backyard on June 25, 2014. The recovered firearm had no magazine inside.

(Final Presentence Investigation Report ("PSR") ¶¶ 10-15).

On December 9, 2014, Mr. Smith was indicted on charges of possessing a firearm and ammunition after sustaining a felony conviction (Count One); possessing crack cocaine with the intent to distribute (Count Two); and possessing a firearm in connection with a narcotics trafficking offense (Count Three). (Dkt. #8 (the "Indictment")). Trial on the Indictment began on March 30, 2015, and concluded on April 2, 2015, when the jury convicted Mr.

Smith of Counts One and Two, and acquitted him of Count Three.  (*See* Minute Entry for April 2, 2015; *see also* Dkt. #43, 45, 47, 49, 51 (trial transcripts)).[2] Of potential significance to the instant motions, the parties stipulated at trial to the felony and interstate nexus elements of the Section 922(g)(1) offense, and the Court charged the jury that the Government was not required to prove that Mr. Smith knew he was a felon at the time he possessed the firearm and ammunition.  (*See* Dkt. #51 at 119-20 (stipulation regarding felony status); *id.* at 121 (stipulation regarding interstate nexus); *id.* at 126 ("The government need not prove that the defendant knew that his prior conviction was punishable by imprisonment for a term exceeding one year, nor is it necessary for the defendant to have been sentenced to imprisonment for more than one year.")).

## B.    The Sentencing

The PSR prepared by the Probation Office disclosed that Mr. Smith had accrued 19 prior convictions, four of which were for felony offenses.  (PSR ¶¶ 33-47, 50).  As the Government noted, at 33 years old, Mr. Smith had had repeated contacts with the criminal justice system over a period spanning 17 years.  (Dkt. #60 at 3-4).  What is more, the Government observed, Mr. Smith had received numerous sentences of imprisonment of one year or more, including a six-year sentence in 2005 after a conviction for robbery in the

---

[2]    Because the felon-in-possession count was bifurcated from the other counts at trial, and presented to the jury only after it had reached a verdict on the other two counts, it was reordered as Count Three in the version of the Indictment that was presented to the jury.  In this Opinion, the Court discusses the counts as originally numbered in the Indictment.

second degree.  (*Id.*).  Mr. Smith had also been charged with several
disciplinary infractions during his period of pretrial detention in the instant
case.  (*Id.* at 4).

The parties vigorously disputed the application of the United States
Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") to Mr. Smith's case, with
the Government and the Probation Office contending that Mr. Smith was a
career offender under U.S.S.G. § 4B1.1, with a resulting Guidelines range of
210 to 262 months (*see* PSR ¶¶ 20-31, 49, 78; Dkt. #60 at 5-13 (Government
sentencing submission)), and Mr. Smith contending that he was not a career
offender, and that his actual Guidelines range was 84 to 105 months (Dkt. #57
at 6-15 (Defense sentencing submission)).  Ultimately, after conducting a
lengthy oral argument with counsel, the Court concluded that Mr. Smith did
not qualify as a career offender, and that the relevant Guidelines range was
140 to 175 months.  (Sentencing Transcript ("Sent. Tr." (Dkt. #89)) at 59)

The Court then heard oral presentations from counsel from both sides,
and from Mr. Smith himself.  After taking a recess to consider the parties'
arguments, the Court sentenced Mr. Smith principally to concurrent terms of
120 months' imprisonment on each of Counts One and Two.  (Sent. Tr. 76; *see
also* Dkt. #62 (judgment)).  As part of its sentencing rationale, the Court
explained that:

> I think in the common understanding of the term Mr.
> Smith might be described as a career offender.  But I do
> understand and I'm still abiding by my decision that he
> is not one under the guidelines.  The issue is this.  The
> instant offense was not the worst of his conduct.

Although, I think there are some facts attending to it including what appears to have been a domestic violence incident that is quite bad.

I also don't think it is enough to say that Mr. Smith had bad luck with women as some of the letters submitted to me has suggested. I do think he's had bad luck, some of it his own making. But for me as I've struggled with this sentence and I have for a long time now, the career offender guideline was just too high. It did not to me fairly and adequately capture all facets of Mr. Smith's persona, the loving family man that I don't dispute he is, the good things he's done for his family, the attention and the care he has provided to them and the effort that he has made from time to time to be, to live responsibly in society and to be a responsible parent. And so that's why as I said to the government and to the parties previously, were I to have found that the career offender guideline applied, I would have varied downward any way. Similarly, I'm varying downward slightly from the figure that I did calculate because I still think that that number too does not fully capture all that is Mr. Smith, the good and the bad of him.

I also while recognizing the seriousness of the instant offense an[d] while recognizing the seriousness of the criminal history, I'm also mindful of fact that his previous[ ] sentence was [nowhere] near this length.

(Sent. Tr. 74-75)

## C.    The Appeal and the Section 2255 Motion

Mr. Smith appealed from his conviction and sentence to the United States Court of Appeals for the Second Circuit. (Dkt. #64 (notice of appeal)). In brief, Mr. Smith argued that (i) his conviction on Count Two rested on legally insufficient evidence and (ii) the Court had erred in calculating his Guidelines range. (Appeal Dkt. #19 (appellant's brief)). The Second Circuit affirmed Mr. Smith's conviction and sentence by summary order issued on March 8, 2018,

and amended on July 19, 2018.  *See United States* v. *Smith*, 884 F.3d 437 (2d

Cir.), *opinion amended and superseded*, 896 F.3d 592 (2d Cir. 2018).

On April 8, 2019, Mr. Smith filed a *pro se* motion to vacate, set aside, or

correct his sentence pursuant to 28 U.S.C. § 2255.  (Dkt. #68).  In it, he argued

that he had been prejudiced by the ineffective assistance of counsel both at

trial and at his sentencing.  With respect to the former, Mr. Smith argued that

counsel had stipulated to a non-existent element of the Section 922(g)(1)

offense — namely, an "intrastate" (as opposed to interstate) nexus, which

conduct violated his rights under the Fifth Amendment.  (*Id.* at 14, 16, 18, 20,

22, 23).  With respect to the latter, Mr. Smith argued that counsel had erred in

not moving to dismiss the firearm or the ammunition count at sentencing,

resulting in a duplicitous charge.  (*See id.* at 11, 13, 15, 17, 19, 21, 23).

The Court ordered responses from defense counsel and from the

Government.  (Dkt. #69, 72).  Defense counsel filed an affidavit on May 22,

2019, in which they averred that (i) both the stipulation at trial and the

references to a nexus requirement concerned the "interstate" nexus that

counsel acknowledged was a requirement of the Section 922(g)(1) offense, and

(ii) Mr. Smith was only convicted of a single Section 922(g)(1) count, thereby

vitiating his multiplicity claim.  (Dkt. #71).  The Government's submission in

opposition made similar arguments.  (Dkt. #73).  Undeterred, Mr. Smith

reiterated the two claims in his reply brief.  (Dkt. #74).

On June 21, 2019, the Supreme Court issued its decision in *Rehaif* v.

*United States*, 139 S. Ct. 2191 (2019), which found in relevant part that in a

prosecution under Section 922(g)(1), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. Three months later, on September 25, 2019, trial counsel asked the Court to appoint counsel from the Criminal Justice Act ("CJA") Habeas Panel so that Mr. Smith could supplement his motion to aid a claim under *Rehaif*. (Dkt. #75). The Court issued an order of appointment the same day (Dkt. #76), and Florian Miedel, Esq., entered a notice of appearance on October 15, 2019 (Dkt. #77).[3]

Counsel for Mr. Smith filed a motion to permit supplementation of Mr. Smith's Section 2255 motion, and for vacatur of his felon in possession conviction. (2255 Dkt. #13-14). Broadly speaking, the defense argued that Mr. Smith should be permitted to add a *Rehaif* claim, and, further, that addition of such a claim necessitated a vacatur of Count One, because there was insufficient evidence in the trial record to permit a finding that Mr. Smith knew of his felon status. (2255 Dkt. #14; *see also* 2255 Dkt. #17 (counseled reply brief)). The Government opposed both components of this motion by letter brief dated January 15, 2020, arguing, among other points, that the proposed claim was time-barred, procedurally defaulted, and without merit. (2255 Dkt. #16).

On April 2, 2020, the Second Circuit issued an opinion in *United States* v. *Miller*, 954 F.3d 551 (2d Cir. 2020), finding, on analogous facts, that the failure to give a knowledge-of-status instruction did not "seriously affect the

---

[3]     The Court extends its appreciation to Mr. Miedel for his fine work on this case.

fairness, integrity or public reputation of judicial proceedings" — and thus did not result in plain error — in a case where "reliable evidence in the record" demonstrated that the defendant was aware of his status as a convicted felon. *Id.* at 559-60. The following day, the Government submitted a letter advising the Court of the decision, and arguing that Mr. Smith's claim should be denied on this basis as well. (2255 Dkt. #18). Counsel for Mr. Smith responded by letter dated April 16, 2020, acknowledging that the decision "appears to serve as an impediment to Mr. Smith's *Rehaif* claim" (2255 Dkt. #19 at 1), but asking the Court "to refrain from deciding Mr. Smith's petition until any motion for a re-hearing *en banc* in the *Miller* case has been denied, and a petition for a *writ certiorari* has been denied by the Supreme Court" (*id.*). The Court granted counsel's application by Order dated April 16, 2020. (2255 Dkt. #20). In a letter dated July 23, 2021, counsel for Mr. Smith advised the Court that the Supreme Court had denied the petition for a writ of certiorari. (2255 Dkt. #21). *See also United States* v. *Miller*, 954 F.3d 551 (2d Cir. 2020), *cert. denied sub nom. Mack* v. *United States*, 141 S. Ct. 2806 (2021).

## DISCUSSION

**A.    The Court Denies Mr. Smith's Section 2255 Motion**

**1.    Motions Under 28 U.S.C. § 2255**[4]

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected on the grounds that it "was imposed in violation of the

---

[4]    Caselaw in this area uses the terms "movant," "petitioner," and "defendant" interchangeably.

Constitution or laws of the United States, or that the [trial] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  However, the grounds for such a collateral attack under Section 2255 are much more limited than those available on a direct appeal.  *See United States* v. *Addonizio*, 442 U.S. 178, 185 (1979).  Relief may lie "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco* v. *United States*, 208 F.3d 27, 30 (2d Cir. 2000); *see generally United States* v. *Washington*, No. 11 Cr. 605 (RJS), 2022 WL 92749, at *3 (S.D.N.Y. Jan. 7, 2022) (outlining standards).

"It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'"  *United States* v. *Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (quoting *Cabrera* v. *United States*, 972 F.2d 23, 25 (2d Cir. 1992)); *accord United States* v. *Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack[.]").  The sole exception is when "there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal."  *Chin* v. *United States*, 622 F.2d 1090, 1092 (1980).  Section 2255 also precludes a defendant from bringing

claims for the first time that could have been raised on direct appeal.  *See Bousley* v. *United States*, 523 U.S. 614, 622-23 (1998).  Where the petitioner has procedurally defaulted on a claim by failing to raise it on direct appeal, the claim may be raised pursuant to Section 2255 only if the petitioner can demonstrate (i) cause for the failure to raise the claim and prejudice from the alleged error, or (ii) actual innocence of the crime.  *Id.*

Cause can be established by showing that the default was the result of "some objective factor external to the defense."  *Murray* v. *Carrier*, 477 U.S. 478, 488 (1986).  For example, where a claim "is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim."  *United States* v. *Whitman*, 115 F. Supp. 3d 439, 443 (S.D.N.Y. 2015) (quoting *Reed* v. *Ross*, 468 U.S. 1, 16 (1984)) (internal quotation marks omitted).  "[A] claim is not reasonably available when, at the time of the procedural default, binding precedent foreclosed the argument or when the defendant lacked the relevant tools with which to raise his claim on direct appeal."  *Id.* (citations and internal quotation marks omitted).  To demonstrate prejudice, the petitioner must show "not just that the errors 'created a possibility of prejudice, but that they worked to his actual and substantial disadvantage.'"  *Borrego* v. *United States*, 975 F. Supp. 520, 522 (S.D.N.Y. 1997) (quoting *United States* v. *Frady*, 456 U.S. 152, 170 (1982)); *see also Gupta* v. *United States*, 913 F.3d 81, 85 (2d Cir. 2019) ("The question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was available at all.").

11

Alternatively, the petitioner may show that the federal court's refusal to consider the merits of his claim will result in a fundamental miscarriage of justice, because he is "actually innocent" of the crimes for which he was convicted. *Aparicio* v. *Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). A court may find that a petitioner is actually innocent only when, after reviewing all of the evidence, it concludes that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Doe* v. *Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) (internal quotation marks omitted).

Generally speaking, a Section 2255 motion requires a hearing unless files and records conclusively show that the movant is entitled to no relief. *See* 28 U.S.C. § 2255(b); *see also Machibroda* v. *United States*, 368 U.S. 487, 494 (1962); *Pham* v. *United States*, 317 F.3d 178, 184 (2d Cir. 2003).

### 2. Mr. Smith Received the Effective Assistance of Counsel

#### a. Ineffectiveness Claims on Collateral Review

Mr. Smith's initial motion papers raised claims of ineffective assistance of trial and appellate counsel. In order to succeed on a claim of ineffective assistance of counsel, a movant must meet the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668 (1984). First, the movant must show that his counsel's representation was deficient, falling below the objective standard of reasonableness. *See id.* at 687-88. During this first step, the standard of review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "This presumption is overcome only if counsel failed to

12

act reasonably considering all of the circumstances." *United States* v. *Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020).

Second, the movant must establish that his counsel's errors resulted in actual prejudice. *See Strickland*, 466 U.S. at 694. A movant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*; *see also United States* v. *Nolan*, 956 F.3d 71, 79 (2d Cir. 2020). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Garner* v. *Lee*, 908 F.3d 845, 862 (2d Cir. 2018).

A court is not required to conduct a *Strickland* inquiry in any particular order. *See Strickland*, 466 U.S. at 697. If the defendant does not successfully establish either the performance prong *or* the prejudice prong, the entire claim fails, and the remaining, unaddressed step becomes moot. *See id.*

### b.   Analysis

The Court can quickly dispense with Mr. Smith's ineffectiveness claims. Beginning with his trial-related claim, the Court notes that counsel for both sides — as well as this Court — recognized that the trial stipulation into which the parties entered concerned the *interstate*, and not intrastate, aspects of the firearm and ammunition. *See supra* at 3-4. The jury was similarly instructed on an interstate nexus requirement. Both the stipulation and the instruction were correct. *See, e.g.*, *United States* v. *Estevez*, 961 F.3d 519, 527 (2d Cir.) ("Section 922(g)(1) provides, in pertinent part, that it is 'unlawful for any person ... who has been convicted in any court of[ ] a crime punishable by

13

imprisonment for a term exceeding one year' — i.e., a felony — to 'possess in or affecting [interstate or foreign] commerce, any firearm.'"), *cert. denied*, 141 S. Ct. 388 (2020).

Mr. Smith's sentencing ineffectiveness argument is similarly unavailing. Count Three of the Indictment charged Mr. Smith with possessing both a firearm and ammunition, but he received only one sentence on that count.  As a sister court in this District has observed:

> "An indictment is multiplicitous when a single offense is alleged in more than one count." *United States* v. *Nakashian*, 820 F.2d 549, 552 (2d Cir. 1987) (internal quotation marks omitted).  The Second Circuit has held that "a convicted felon who simultaneously possesses various firearms and rounds of ammunition can generally only be charged with a single violation of § 922(g)." *United States* v. *Olmeda*, 461 F.3d 271, 280 (2d Cir. 2006); *see also United States* v. *Pelusio*, 725 F.2d 161, 168 (2d Cir. 1983). "*The signal danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense; hence reversal is warranted if the defendant actually was convicted on multiplicitous counts and subjected to multiple punishments.*" *United States* v. *Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (citing 1 Charles A. Wright, Federal Practice and Procedure § 145, at 524-26 (2d ed. 1982)).  That danger "can be remedied at any time by merging the convictions and permitting only a single sentence." *United States* v. *Reed*, 639 F.2d 896, 905 n.6 (2d Cir. 1981); *Ball* v. *United States*, 470 U.S. 856, 864, 105 S. Ct. 1668, 84 L.Ed.2d 740 (1985). …

*Slaughter* v. *United States*, No. 03 Cr. 455 (JFK), 2008 WL 4449476, at *5 (S.D.N.Y. Oct. 1, 2008) (emphasis added).  This Court adopts that analysis fully, and concludes similarly that Mr. Smith received the effective assistance of counsel at sentencing.

### 3.    The Court Did Not Plainly Err in Instructing the Jury

The Court next turns to Mr. Smith's counseled supplement, which sought leave to amend his motion to raise a *Rehaif* claim.  As the Government has noted in its submissions, there are both procedural and substantive hurdles that Mr. Smith must overcome to mount such a claim.  However, whether this Court resolves that application by denying leave to amend to add a *Rehaif* claim, by terming such a claim to be procedurally barred because of a failure to satisfy the cause and prejudice standard, or by rejecting it on the merits, the end result is the same: *Rehaif* offers no relief to Mr. Smith.

The Court begins by considering Mr. Smith's application for leave to amend.  As the parties appear to recognize (*see, e.g.*, 2255 Dkt. #14 at 3; 2255 Dkt. #16 at 2; 2255 Dkt. #17 at 2-3), a standalone *Rehaif* claim would have been untimely if filed on December 16, 2019.  *See* 28 U.S.C. § 2255(f)(1).  To be timely, the claim would have to relate back to Mr. Smith's original motion.  *See Ching* v. *United States*, 298 F.3d 174, 177 (2d Cir. 2002) (noting that Fed. R. Civ. P. 15 governs amendments to Section 2255 motions).  However, relation back to an earlier, timely-filed Section 2255 motion is not automatic.  Rather, the proposed amendment must "assert[ ] a claim ... that arose out of the conduct, transaction, or occurrence set out ... in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  In the Section 2255 context, this requires the original and amended motions to "state claims that are tied to a common core of operative facts."  *Mayle* v. *Felix*, 545 U.S. 644, 664 (2005); *see also id.* at 650 ("An amended habeas petition ... does not relate back (and thereby escape AEDPA's

15

one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.").

The proposed *Rehaif* claim does not relate back to Mr. Smith's original motion.  That motion, as noted, levied claims of ineffectiveness concerning the interstate nexus requirement of Count One and the possibility of multiplicity at sentencing; in no way did it address the knowledge element of Count One.  "For the newer claim to relate back, it must arise out of the same occurrence set forth in the original pleading, Fed. R. Civ. P. 15(c)(1)(B) (emphasis added), not the same occurrence that led to the charges."  *Young* v. *United States*, No. 09 Cr. 274 (CS), 2020 WL 7711686, at *1 (S.D.N.Y. Dec. 29, 2020); *see also Cotton* v. *Burge*, No. 08 Civ. 453 (WMS), 2009 WL 3165868, at *3 (W.D.N.Y. Sept. 26, 2009) (citing *Mayle* for proposition that relation back "is unavailable merely because the proposed claims relate to the same trial, conviction, or sentence as the original petition").  Even were the Court to find that the proposed amendment related back to Mr. Smith's original motion, it would deny the application to amend on grounds of futility, for reasons the Court will discuss *infra.  See United States* v. *Peralta Fernandez*, No. 15 Cr. 599 (RA), 2021 WL 395567, at *7 (S.D.N.Y. Feb. 3, 2021) (denying motion to amend Section 2255 motion, in part based on futility).

A second procedural hurdle concerns the possibility of procedural default because the claim was not raised in Mr. Smith's direct appeal.  *See Bousley*, 523 U.S. at 622-23.  In his counseled submissions, Mr. Smith acknowledges that he did not challenge the knowledge element of Count One on direct

appeal, but argues that he satisfies the cause and prejudice standard to bring such a claim now because, among other things, (i) a *Rehaif* claim was not available to him on direct appeal given "the absolute unanimity of every appeals court and the uniformity of pattern instructions on [the knowledge] issue" (2255 Dkt. #14 at 7), and (ii) "actual prejudice to Mr. Smith is established because his conviction was unsupported by proof of an element of the offense," and, indeed, "the jury was affirmatively misinstructed on that element" (*id.*).  This Court adopts the majority position on this issue, which concludes that in cases of this type — where there is overwhelming evidence to support a movant's knowledge of his prohibited status — the prejudice prong is not satisfied.  *See, e.g.*, *United States* v. *Morales*, No. 06 Civ. 10217 (DC), 2021 WL 4847319, at *3 (S.D.N.Y. Oct. 18, 2021) ("There is no question that Morales was, at the time of the offense, a convicted felon.  At the time of unlawful possession, Morales had been out of prison less than a year after a prison term of approximately six and a half years.  These facts are fatal to any suggestion that Morales was unaware of his restricted status and that therefore he was prejudiced by the Court not giving an instruction as to his knowledge of his status as a felon."); *Delva* v. *United States*, No. 12 Cr. 802 (JMF), 2020 WL 2214801, at *5 (S.D.N.Y. May 7, 2020) (finding that prejudice is not shown where "the record 'removes any doubt that the defendant was aware of his membership in § 922(g)(1)'s class'" (quoting *United States* v. *Miller*, 954 F.3d 551, 560 (2d Cir. 2020))); *Rosario Figueroa* v. *United States*, No. 16 Civ. 4469 (VEC), 2020 WL 2192536, at *5 (S.D.N.Y. May 6, 2020) (finding no prejudice

17

where movant "had been sentenced to seven separate sentences of imprisonment of more than one year, including one 16-year sentence") (collecting cases).

Finally, Mr. Smith's claim fails on the merits.  Both the Supreme Court and the Second Circuit have made clear that a defendant's failure to request an instruction on knowledge in accordance with *Rehaif* is subject to review for plain error, which requires the Court to consider whether "[i] there is an error; [ii] the error is clear or obvious, rather than subject to reasonable dispute; [iii] the error affected the appellant's substantial rights; and [iv] the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Miller*, 954 F.3d at 557-58; *see also Greer* v. *United States*, 141 S. Ct. 2090, 2093 (2021).

The first two elements are easily satisfied here.  In *Miller*, the Second Circuit declined to reach the third element, but found that the defendant's claim failed on the fourth element, because the record disclosed that he had been sentenced to, and served, more than one year in prison for a prior felony conviction.  *Miller*, 954 F.3d at 560 ("The PSR shows that Mack's prior conviction, for the unlawful theft and alteration of a firearm, resulted in a total effective sentence of ten years' imprisonment, with execution suspended after three years, which removes any doubt that Mack was aware of his membership in § 922(g)(1)'s class."); *accord United States* v. *Willis*, 14 F.4th 170, 187-88 (2d Cir. 2021) ("In this case, it is undisputed that both defendants were sentenced to, and served, more than one year in prison for their prior felony convictions.

18

Their stipulations to that fact conclusively prove that they knew of their status."). The Supreme Court has concluded similarly in *Greer* that "[i]n felon-in-possession cases, a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon." *Greer*, 141 S. Ct. at 2100.

As the defense has recognized, these decisions are fatal to Mr. Smith's *Rehaif* claim. (2255 Dkt. #19, 21). Mr. Smith was sentenced on several occasions to terms of imprisonment exceeding one year, including in particular a six-year sentence on his 2005 robbery conviction. (*See* PSR ¶¶ 42 (eighteen months to three years), 43 (eighteen months to three years), 45 (six years)). He then stipulated to having a felony conviction at his trial. There can be no doubt that, at the time of his possession of the firearm and ammunition, Mr. Smith was aware of his felon status. For these reasons, there was no plain error in the Court's failure to charge the jury on the knowledge element in accordance with *Rehaif*, and no basis to vacate his sentence in this case. The Court denies Mr. Smith's Section 2255 motion in its entirety.

**B.  The Court Grants in Part Mr. Smith's Compassionate Release Motion**

**1.  The Section 3582(c)(1)(A)(i) Motion**

While his Section 2255 motion was pending, Mr. Smith filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing the conditions of his confinement during the pandemic and his medical conditions. At the Court's direction, counsel for Mr. Smith filed a supplemental

submission, dated June 25, 2020, requesting that Mr. Smith be immediately released from custody; the counseled submission provided additional details concerning requests for compassionate release directed to the Bureau of Prisons (the "BOP"), Mr. Smith's medical conditions, the risks of the COVID-19 virus in the carceral setting, and Mr. Smith's plans for reentry.  (Dkt. #80).  The Government opposed the request by letter brief dated July 9, 2020; it noted the absence of infected inmates at Mr. Smith's facility, and argued more broadly that Mr. Smith presented a continuing danger to the community and that the relevant factors counseled against his early release.  (Dkt. #82).  Thereafter, the Court received several supplemental submissions from the defense.  (Dkt. #83-86).

By Order dated March 24, 2022, the Court sought additional information concerning Mr. Smith from both sides.  (Dkt. #87).  The Government filed a letter brief on April 1, 2022, noting, among other things, that (i) USP Thomson then had no cases of COVID-19 among inmates or staff; (ii) Mr. Smith had refused receipt of the COVID-19 vaccine; and (iii) Mr. Smith had been charged with a disciplinary infraction additional to those previously reported by the Government.  (Sealed Gov't Letter of April 1, 2022 ("Sealed Gov't Letter")).  Mr. Smith filed a counseled supplement on April 5, 2022, in which he provided additional information concerning his most recent disciplinary proceeding and reiterated his request for a sentence reduction based on the "extraordinarily harsh conditions Mr. Smith has been forced to endure during the last two years."  (Dkt. #88 at 2).

2.     **Applicable Law**

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act,
Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a
defendant's sentence upon motion of the Director of the BOP, or upon motion
of the defendant.  A defendant may move under § 3582(c)(1)(A)(i) only after the
defendant has "fully exhausted all administrative rights to appeal a failure of
the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse
of 30 days from the receipt of such a request by the warden of the defendant's
facility, whichever is earlier."  *Id.*  The Court understands that Mr. Smith's
application to the Warden of his facility was denied.  (Dkt. #82-1 (Warden
Response form)).

When considering an application under § 3582(c)(1)(A)(i), a court may
reduce a defendant's sentence only if it finds that "extraordinary and
compelling reasons warrant such a reduction," and that "such a reduction is
consistent with the applicable policy statements issued by the Sentencing
Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Jones*,
17 F.4th 371, 374 (2d Cir. 2021) ("Thus, extraordinary and compelling reasons
are necessary — but not sufficient — for a defendant to obtain relief under
§ 3582(c)(1)(A).  As we have just noted, a district court must also consider 'the
factors set forth in section 3553(a)' before granting relief." (citing 18 U.S.C.
§ 3582(c)(1)(A)).  "The defendant has the burden to show he is entitled to a
sentence reduction." *United States* v. *Ebbers,* No. 02 Cr. 1144-3 (VEC), 2020

WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970

F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has summarized the standards pursuant to which

district courts must evaluate compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a
> previously imposed term of imprisonment upon finding
> that "extraordinary and compelling reasons warrant
> such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court
> deciding a compassionate release motion can consider
> "the full slate of extraordinary and compelling reasons
> that an imprisoned person might bring before [it]."
> *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir.
> 2020). But there are three requirements that must be
> satisfied before a court can grant such relief. First,
> absent waiver or forfeiture by the government, an
> inmate must exhaust administrative remedies by
> requesting such relief from prison authorities.
> Specifically, an inmate may ask the sentencing court to
> consider reducing a sentence only "after the defendant
> has fully exhausted all administrative rights to appeal a
> failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the
> receipt of such a request by the warden of the
> defendant's facility, whichever is earlier." 18 U.S.C.
> § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7
> F.4th 120, 124 (2d Cir. 2021) (holding that the
> government may waive or forfeit the exhaustion
> requirement). Second, a court must "consider[ ] the
> factors set forth in [18 U.S.C. §] 3553(a) to the extent
> that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see
> [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir.
> 2021)]. Section 3553(a), in turn, lists numerous factors
> a court must review when imposing a sentence. These
> include, as most relevant here, "the nature and
> circumstances of the offense and the history and
> characteristics of the defendant"; "the need for the
> sentence imposed ... to reflect the seriousness of the
> offense, to promote respect for the law, and to provide
> just punishment for the offense"; "the need for the
> sentence imposed ... to provide the defendant with ...
> correctional treatment in the most effective manner";
> and "the need to avoid unwarranted sentence

> disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing what can qualify as "extraordinary and compelling reasons"). The court's discretion includes both the power to reduce, and the power to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

### 3.   Analysis

Certain of Mr. Smith's proffered bases for compassionate release are less significant now then they were in 2020, when the COVID-19 pandemic first emerged. Originally, Mr. Smith argued that the conditions of his incarceration placed him at a higher risk of contracting COVID-19 (or of having a more severe reaction if infected), because of the congregate setting, his existing asthma condition, and the inability of prison staff to handle an outbreak of the virus. (*See, e.g.*, Dkt. #80 at 2-3). This Court acknowledges that courts in this District have granted, and denied, compassionate release motions predicated on the existence of the COVID-19 pandemic and the risks of its transmission in prisons. *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) (collecting cases). This Court

continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases).

Mr. Smith has not made such a showing. For starters, there is no indication that his asthma condition is "moderate or severe," which is what the Centers for Disease Control and Prevention (the "CDC") states might increase an individual's chances of contracting severe illness from the COVID-19 virus. (Dkt. #80 at 2; Dkt. #83 at 1, 4). *See also* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed April 8, 2022); *For People Living in Prisons and Jails*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (accessed April 8, 2022).[5] The Court also perceives a disconnect between Mr. Smith's professed concern about contracting severe illness from COVID-19 and his refusal of the COVID-19 vaccine when it was offered to him in April 2021. *See generally United States* v. *Felipe*, No. 18 Cr. 744-2 (KPF), 2022 WL 36832, at *4 (S.D.N.Y.

---

[5]     *See also United States* v. *Jones*, 17 F.4th 371, 375 (2d Cir. 2021) ("While current guidance from the Centers for Disease Control and Prevention ('CDC') lists 'moderate-to-severe' asthma as a condition that 'can make [it] more likely' that a COVID-19 infection will result in severe illness, People with Moderate to Severe Asthma, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/asthma.html (updated Apr. 7, 2021), [Defendant] does not claim that he suffers from moderate or severe asthma, rather than a mild form of asthma.").

Jan. 3, 2022) (collecting cases where district courts have denied compassionate release requests made by movants who have declined to receive the COVID-19 vaccine).  Finally, the Court takes notice of the BOP's report that USP Thomson currently has no cases of COVID-19 among inmates or staff.  *See* Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (accessed April 8, 2022).  On balance, this Court concludes that the danger that Mr. Smith faces from infection with COVID-19, even accounting for his asthma, does not amount to extraordinary and compelling reasons for granting compassionate release.

In his counseled submission, Mr. Smith offers an additional basis for compassionate release that has more traction, namely, that the conditions of his confinement during the COVID-19 pandemic have resulted in a sentence that was more severe than the Court contemplated when it originally sentenced Mr. Smith in October 2015.  (*See, e.g.*, Dkt. #88 at 1 ("The grimness of the conditions have made his punishment far more severe than the Court could have envisioned, or intended, when it sentenced Mr. Smith to 120 months in 2015.")).  The Court acknowledges that it could not have foreseen the restrictions that would be precipitated by the pandemic (including lockdowns and curtailment of facility programming and visitation opportunities), nor the public health risks faced by individuals like Mr. Smith who spent the entirety of the pandemic in a carceral setting, nor the length of time over which these risks and deprivations would persist.  And in a prior decision resolving a compassionate release motion, the Court recognized "that courts reviewing

25

motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and more punitive than would otherwise have been the case.'" *United States* v. *Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting *United States* v. *Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)); *see also United States* v. *Mcrae*, No. 17 Cr. 643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing.").  In short, the Court believes that pandemic-induced conditions of confinement *may* constitute "extraordinary and compelling" circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic.  It therefore proceeds to consider whether such relief is warranted in light of the factors set forth in 18 U.S.C. § 3553(a).

In this case, the Section 3553(a) factors — which include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant" — point in both directions.  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C).  To recap, the instant offense is Mr. Smith's fifth felony conviction, and his criminal history includes more than a dozen additional criminal convictions.

26

*See supra* at 4.  The instant offense involved both drugs and a loaded firearm, and culminated in Mr. Smith discarding the firearm in a residential backyard while running away from the police.  (PSR ¶¶ 11, 14, 15).  And during his period of incarceration, Mr. Smith has received numerous disciplinary violations, including citations for assault, fighting with other inmates, and possession of a weapon.  (Sealed Gov't Letter, Ex. B).  As countervailing facts, the Court notes that Mr. Smith has been detained on these charges since October 2014 and has served nearly three-quarters of his sentence (Dkt. #5); that he has attempted to better himself in prison, including by taking classes (Dkt. #85 at 1-2; Dkt. #88 at 1); that he has lost several family members in the course of the pandemic (Dkt. #86 at 1); and that he has proposed a plan of reentry (Dkt. #80 at 2).  After balancing the severity of Mr. Smith's criminal conduct (both in this case and previously) with the severity of the conditions of his confinement, this Court will grant his request for compassionate release in part, by reducing his sentence by six months.[6]

## CONCLUSION

For the reasons set forth in the remainder of this Opinion, the Court DENIES Mr. Smith's motion pursuant to 28 U.S.C. § 2255 to vacate his conviction.  A certificate of appealability shall be not granted, because Mr. Smith has not made a substantial showing of a denial of a federal right and

---

[6]     As additional support, Mr. Smith offers his troubled upbringing and certain details about the instant offense conduct.  (Dkt. #80 at 5).  As he acknowledges, however (*id.*), the Court weighed and considered this information at the original sentencing, and sees no basis to revisit those considerations.

appellate review is, therefore, not warranted. *Hoffler* v. *Bezio*, 726 F.3d 144, 154 (2d Cir. 2013); *Tankleff* v. *Senkowski,* 135 F.3d 235, 241 (2d Cir. 1998).

Further, the Court GRANTS IN PART Mr. Smith's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), such that his sentence is modified to reduce the term of imprisonment on Counts One and Two from 120 months to 114 months, to run concurrently. All other aspects of the sentence remain in full force and effect.

The Clerk of Court is directed to docket this Opinion in Case Nos. 14 Cr. 813 and 19 Civ. 3137; to terminate all pending motions in both cases; and to close Case No. 19 Civ. 3137.

Dated:     April 8, 2022
           New York, New York

_____
       KATHERINE POLK FAILLA
       United States District Judge